# CIRCUIT COURT OF ACCOMACK COUNTY

Reed M. Ennis

v.

Accomack County

September 15, 2010

Case No. 10CL335

By Judge Glen A. Tyler

In this statutory proceeding, the Court must decide whether the Petitioner's complaint regarding his employment with the County is grievable. This proceeding was filed by the Petitioner, Ennis, pursuant to Va. Code Ann. § 15.2-1506 and § 15.2-1507 and the ordinances of the County of Accomack establishing its personnel policies, including a grievance procedure according to the law of the Commonwealth.

*Facts*

Reed M. Ennis had been employed by the County for a number of years as Director of the Department of Central Accounting; he was referred to as the Director of Finance. That Department included the function of information technology, though not as a separate department in Central Accounting.

In 2008, Ennis was placed on paid administrative leave following the discovery of financial difficulty as a result of differences in forecasted revenues and planned expenditures, meaning the County Administrator and Board of Supervisors believed there was a failure to communicate problematic financial circumstances adequately and timely to the Administrator and the Board.

Thereafter, in November of 2008, the County Administrator, Steven B. Miner, removed Ennis from all duties as Director of Finance

and assigned him new duties as the Information Technology Director and Special Projects Manager.

The Administrator appointed Michael Mason as Director of Finance, because of perceived failures by Ennis in his function as Finance Director.

The Administrator announced, on November 21, 2008, a "new" management structure. The transfer of Ennis was from Finance Director to Director of "IT and Management Services." Miner issued a press release on November 24, 2008, that Ennis was assigned to a "new" title, and that Mason had taken the position of Finance Director. Miner stated in the release that "information technology duties, *formerly under* the Finance Department have transferred with Mr. Ennis, as well as *new duties* in management services." (Emphasis added.) In March of 2009, Ennis prepared a description of IT and Management Services, showing that he answers directly to the County Administrator. The description does not mention Central Accounting or any relationship with financial or accounting functions. In April of 2009, Ennis provided Miner with a County government organization chart, prepared by Ennis, showing no Department of Central Accounting; however, the chart shows Finance in one place and IT and Management Services in another place as separate Departments, each answering separately and directly to the Administrator.

The Annual Financial Report of the County, an official, required document, effective for the fiscal year ended as of June 30, 2009, prepared by Michael Mason on January 18, 2010, includes an organizational chart. The chart does not show a Central Accounting Department. The chart shows a line, separate from all other departments, from the Director of Finance to the Administrator. The chart also shows a line connecting to six other lines to six other departments, one of which is the Department of IT and Management Services. In other words, while there are seven lines leading directly to the Administrator, one line, that of Finance Director, emphasizes its separation from the other six. The report also lists the Administrative Officers of the County, including the Administrator, the County Attorney, and nine Directors of separate Offices. There is no Office of Central Accounting.

A plan proposed for the year 2011 prepared by Ennis of the Department of IT and Management Services does not include anything relative to what would be central accounting functions.

On May 7, 2010, Miner informed Ennis that there would be a reduction of the workforce in IT and Management Services and, in particular, the position of Director of IT and Management Services would be eliminated due to budget cuts in that Department.

On May 28, 2010, on official letterhead styled County of Accomack, Information Technology and Management Services, Reed M. Ennis, Director, the Petitioner, Ennis, notified the Administrator, Miner, of his

intent to exercise his right to displace Mason as Director of Finance, pursuant to County Personnel Policy 602.0.

On June 11, 2010, Miner reminded Ennis that, in 2008, the Finance Department (Central Accounting) was separated into two Departments, a Finance Department and an IT and Management Services Department. He told Ennis that the displacement policy would apply only within the IT and Management Services Department.

On June 22, 2010, Ennis filed with Miner a formal grievance pursuant to County Personnel Policy 701 "[I]n light of the structure in the Central Accounting Department . . ." he said.

On June 28, 2010, Miner concluded that Ennis' complaint was not grievable according to County Personnel Policy 701 and so informed Ennis.

On July 5, 2010, Ennis filed with the County Administrator a notice of appeal to the Circuit Court of the Administrator's decision of non-grievability. As his argument in his notice of appeal, Ennis attached County financial and budgetary documents showing under the heading of General Fund code or chart numbers 1215 for Central Accounting and 1216 for Management Information Systems. Ennis suggests that accounting and auditing purposes dictate what departments must necessarily be in existence for personnel or management purposes. The County argues in its reply that budget documents are used to account for receipts and expenditures of revenues but do not create departments. Ennis also includes a County intercom directory showing his number under "Central Accounting." He additionally provides his recent timesheets showing his department as Central Accounting, signed for approval by the Administrator. (Note that these timesheets are dated after his termination which occurred in the previous month.)

No documentation provided to the Court on appeal suggests that there is any department in the County with two directors of equal classification. As a practical matter, there would not logically be two Directors of a Central Accounting Department.

## Policies

County policy 602.0 governs the rights of full-time employees who are terminated by layoff. Under that policy on a *departmental basis*, senior employees like Ennis, may displace less senior employees like Mason, of equal grade. County policy 701 is the grievance procedure of the County, established pursuant to Va. Code § 15.2-1506 and § 15.2-1507. Pursuant to that policy, grievable complaints include among others the application of personnel policies; however, non-grievable complaints specifically include termination by layoff based upon reduction in force or job abolition. An employee may request a determination by the Administrator whether or

not a complaint is grievable. The determination is appealable to the Circuit Court. There is by law no appeal from the Circuit Court.

## Question

The appeal was heard and considered by the Court upon the record on August 20, 2010.

Based on the foregoing facts and circumstances, the parties have agreed that there is no factual dispute; the issue is one of law. While there was a Department of Central Accounting, the Administrator, without a formal written ordinance or resolution or written directive from the Board of Supervisors, created two Departments, the Department of Finance with Michael Mason as Director and the Department of Information Technology and Management Services with Reed M. Ennis as Director.

The Petitioner argues that a County Administrator has no authority to abolish or create departments. As legal authority, he cites the so-called Dillon Rule and two Richmond Circuit Court cases, *School Bd. of the City of Richmond v. Wilder*, 74 Va. Cir. 309 (Richmond 2007), and *Richmond City Council v. Wilder, Mayor*, 74 Va. Cir. 382 (Richmond 2007), decided in November 2007. The Respondent County argues that the Dillon Rule does not apply because Va. Code § 15.2-1500 et seq., grants authority to the Administrator.

The single, narrow issue in this case raised by the Petitioner is whether the so-called Dillon Rule prevents a County Administrator from creating within the executive administration, for personnel and management purposes, two separate departments from a former single department without formal, prior approval from the Board of Supervisors.

## Decision

The two Richmond Circuit Court cases are not persuasive because their facts are far different from this case, not the least of which is that the Richmond City Council there had specifically previously resolved or otherwise explicitly provided what the mayor and other executives should do or not do. That Court's application of the Dillon Rule to those cases was made of whole cloth.

It is now quite easily learned from the Internet that John Forrest Dillon was a state and federal judge from Iowa. He was later a Professor in Columbia Law School and Yale Law School. His "Rule" was expressed in an 1868 case. He explained more clearly in his 1873 treatise *Law of Municipal Corporations* that municipal governments have only the powers that are expressly granted to them by the legislature, those necessarily implied from what is expressed, and those indispensable to municipal existence and function. Such powers are narrowly construed. If the method

of implementing the power is not expressed, the municipal government may choose a reasonable method.

Professor A. E. Dick Howard in his *Commentaries on the Constitution of Virginia* (1974) reports that Courts continue to construe grants of power to localities narrowly. He reports that grants of power to localities, now including counties as well as cities, must be made expressly. Howard points out that Dillon's Rule is adhered to in Virginia courts.

It is clear from the foregoing examination that Dillon's Rule is applied to authority flowing from the legislature to cities and counties. It is not a rule that applies or flows between a board of supervisors and a county administrator.

That the Accomack County Board of Supervisors has the authority to create, abolish, or change departments within its executive administration is not questioned. It could not be seriously contended that the Board did not know of or understand what departments previously existed or were thereafter created within the administration by the Administrator. The two Departments had existed for well over a year. The Board did not expressly direct the Administrator to create two departments out of one, and, most importantly for this case, neither did the Board interfere with the Administrator's executive decision to do so. Dillon's Rule does not apply to require express authority.

## Conclusion

The decision of the Administrator that the Petitioner's complaint is not grievable is upheld because (1) he was not in a department of Central Accounting with Michael Mason because there was no such department; (2) Ennis was terminated by layoff from the Department of IT and Management Services, and (3) Ennis cannot displace the director of another department.